IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAMEON MONROE ISBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1023 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER OF COURT

AND NOW, this 19th day of May, 2014, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") partially denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed his pending applications for benefits[1] on April 22, 2010, alleging a disability onset date of August 2, 2009, due to knee and back impairments. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on November 2, 2011, at which plaintiff, represented by counsel, appeared and testified. On December 7, 2011, the ALJ issued a partially favorable decision finding plaintiff disabled beginning March 9, 2011, but not disabled before that date. On June 10, 2013, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 37 at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §404.1563(c) and 416.963(c). He has a high school education having obtained a GED. He has past relevant work as a waiter/bartender, janitor, packaging division supervisor, dishwasher and forklift operation crew leader, but he has not performed any substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff became disabled within the meaning of the Act on March 9, 2011. The ALJ found that while plaintiff suffers from the severe impairments of degenerative joint disease of the knees, status post multiple reconstruction surgery, anserine bursitis bilaterally, lumbosacral musculoskeletal strain, and chronic pain syndrome, the medical evidence does not show that plaintiff's impairments, alone or in combination, meet or medically equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that prior to March 9, 2011, plaintiff retained the residual functional capacity to perform sedentary work but limited to carrying 5 pounds occasionally and 2 pounds

---

[1] For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on his alleged onset date and has acquired sufficient coverage to remain insured through June 30, 2014.

AO 72
(Rev. 8/82)

frequently, he can never knee or crawl and can only occasionally engage in all other postural activities. (R.22). A vocational expert identified numerous categories of jobs which plaintiff could have performed prior to March 9, 2011, based upon his age, education, work experience and residual functional capacity, including telephone clerk, telephone solicitor and cashier. Relying on the vocational expert's testimony, the ALJ found that prior to March 9, 2011, there were jobs existing in significant numbers in the national economy that plaintiff could have performed. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act *prior to* March 9, 2011.

*After* March 9, 2011, however, the day that plaintiff underwent a total left knee arthroplasty, the ALJ found additional limitations in plaintiff's ability to perform sedentary work, including: that he is restricted to a sit/stand option which would allow him to alternate between sitting for a ½ hour, standing for 5 minutes, then sitting for a ½ hour; that he can perform only simple, unskilled, repetitive work; and, that he will be off-task for 10 minutes every hour. (R. 25). With these additional limitations, the vocational expert testified that there are no jobs in the national economy that plaintiff can perform. Accordingly, the ALJ found that plaintiff became disabled on March 9, 2011.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

AO 72
(Rev. 8/82)

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[2] 20 C.F.R. §§404.1520 and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff challenges the ALJ's determination that he was not disabled prior to March 9, 2011. Specifically, plaintiff contends that: (1) the ALJ improperly evaluated the medical evidence in finding that plaintiff's treating physician's report dated August 11, 2011, was not retroactive to the period from plaintiff's alleged onset date to March 9, 2011; (2) the ALJ erred in not re-contacting his treating physician to ascertain whether the report was intended to be retroactive; and, (3) the ALJ erred in failing to consult with a medical advisor to establish plaintiff's onset date. Upon review, this court is satisfied that the ALJ properly evaluated the evidence and that the ALJ's finding that plaintiff was not disabled prior to March 9, 2011, is supported by substantial evidence.

Plaintiff's first argument is that the ALJ improperly evaluated the medical evidence in failing to give retroactive effect to the August 11, 2011, physical residual functional capacity questionnaire (R. 300-305) provided by plaintiff's treating physician, Dr. Scott Baron, which the ALJ found to establish plaintiff's functional capabilities *after* his knee surgery on March 9, 2011. (R. 25). The court finds no error in the ALJ's analysis of this evidence nor his determination that Dr. Baron's assessment is not retroactive to the period prior to plaintiff's surgery.

---

[2] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003).

AO 72
(Rev. 8/82)

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §§404.1527(d)(2) and 416.927(d)(2); Fargnoli, 247 F.3d at 33. Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. However, when a treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(d) and 416.927(d). Importantly, the opinion of any physician on the issue of what an individual's residual functional capacity is or on the ultimate determination of disability never is entitled to special significance. 20 C.F.R. §§404.1527(e) and 416.927(e); SSR 96-5p.

Here, the ALJ adhered to the foregoing standards in evaluating Dr. Baron's assessment and in explaining why it should not be given retroactive effect to the period *prior to* March 9, 2011. (R. 24-25). In particular, the ALJ noted that there is no indication in Dr. Baron's report that his assessment was retroactive and that "any such attempt to apply these assessments to the time period prior to March 9, 2011, would be inconsistent with Dr. Baron's own treatment records." (R. 25). The ALJ further noted plaintiff's training for work in graphic design in December 2009, that he walked his children to school in June 2010 and that he reported in September 2010 that his pain level was "not real bad." (Id.)

The ALJ's analysis is supported by the record. As noted by the ALJ in his decision, there is nothing in Dr. Baron's pre-surgery records indicating that plaintiff's impairments resulted in the debilitating limitations contained in the August 2011 assessment prior to March 9, 2011. Rather,

AO 72
(Rev. 8/82)

while acknowledging the certainty that plaintiff ultimately would require total knee replacements at some point, they further suggest that plaintiff was coping fairly well and was not totally debilitated. As of November 5, 2009, Dr. Baron remarked that plaintiff's tolerances for standing and walking were for 30 minutes straight. (R. 205). On December 17, 2009, he noted that plaintiff's knees "are actually doing better" while regularly taking anti-inflammatory medication and that while he was still "moderately symptomatic" the pain was more tolerable. (R. 204). In that same report, Dr. Baron also indicated that he wanted to "buy [plaintiff] some years" before the requisite total-knee arthroplasty. (Id.)

In addition, the other medical evidence in the record also supports the ALJ's determination that plaintiff's impairments did not become disabling until March 9, 2011. On August 10, 2010, the consultative examiner determined that plaintiff could stand/walk about 3 hours per day and that his sitting was unlimited. (R. 211). On August 17, 2010, the state agency reviewing physician indicated that the consultative examiner's statement that plaintiff is limited in standing, walking, kneeling, stooping, crouching and climbing is well-supported by the medical and non-medical evidence. (R. 73). And, on October 29, 2010, Dr. Pressman, an associate of Dr. Baron, indicated that plaintiff at that time was "coping fairly well" and suggested that plaintiff would be able to do "fully sedentary" work. (R. 221).

There is no additional medical evidence in the record between October 29, 2010, and March 9, 2011. Based on the available medical records, the court is satisfied that the ALJ's determination that plaintiff was not disabled from his alleged onset date until March 9, 2011, is supported by substantial evidence. And although plaintiff argues that it was not logical for the ALJ to find that he was not disabled before the surgery, but became disabled after the surgery, when the surgery was intended to correct the problem, not enhance it, the post-surgery records and plaintiff's

testimony suggest that the surgery was not successful, explaining the more debilitating limitations set forth in Dr. Baron's August 2011 assessment. On July 15, 2011, Dr. Pressman reported that plaintiff's range of motion "is less than which would be desired" (R. 376). By October 28, 2011, Dr. Pressman was reporting that plaintiff had a "poor result on the left [knee] with significant stiffness" and, in addition, that he suffered a new injury to his right knee in a fall down five stairs. (R. 371-72). In addition, plaintiff testified at the hearing on November 2, 2011, that he would need a "revision" on his left knee because it was "not responding." (R. 52).

Based upon his review of the <u>entire</u> record, the ALJ concluded that prior to March 9, 2011, plaintiff's impairments, while severe, did not result in any limitations beyond lifting and carrying restrictions, the inability to ever kneel or crawl, and only occasional other postural activities. Because the additional limitations arising post-surgery were not supported by the objective evidence prior to surgery, and were inconsistent with other substantial pre-surgery evidence in the record, including Dr. Baron's own pre-surgery findings, the ALJ did not err in not giving Dr. Baron's August 2011 assessment retroactive effect. 20 C.F.R. §§404.1527(d) and 416.927(d); SSR 96-2p.

In sum, the ALJ did a thorough job in his decision in setting forth the relevant medical evidence and explaining why he rejected or discounted any evidence. The court has reviewed the ALJ's decision and the record as a whole and is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Plaintiff next contends that the ALJ erred in not re-contacting Dr. Baron to ascertain whether the limitations set forth in his August 11, 2011, assessment were intended to be retroactive to the period from plaintiff's alleged onset date to the date of his surgery on March 9, 2011. The questionnaire completed by Dr. Baron expressly asked for the earliest date that the "description

of symptoms and limitations" applied. No response was given to this question. Plaintiff now argues that the ALJ should have re-contacted Dr. Baron for an answer. The court finds no error in the ALJ's decision not to re-contact Dr. Baron.

The Regulations in effect at the time of the hearing in this case provided that an ALJ must re-contact a medical source "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§404.1512(e)(1) & 416.912(e)(1).[3] However, re-contact under the applicable Regulations was required only when "the evidence we receive from your treating physician ... is inadequate to determine whether you are disabled." Johnson v. Commissioner of Social Security, 529 F.3d. 198, 205 (3d. Cir. 2008); Buckner v. Astrue, 2012 WL 5392255 at *11.

Here, the record was developed sufficiently for the ALJ to make the determination that plaintiff was not disabled prior to March 9, 2011, and there was no need for him to re-contact Dr. Baron. Indeed, even had Dr. Baron been re-contacted, and had he then indicated that his assessment was meant to be retroactive, the ALJ would not have been obliged to accept that answer in light of the substantial other evidence in the record establishing that the *debilitating* limitations arising from plaintiff's impairments did not begin until March 9, 2011. Accordingly, the court finds no error in the ALJ's decision not to re-contact Dr. Baron under the Regulations in place at the time of the decision. See Johnson, 529 F.3d at 205 (ALJ had no duty to re-contact a medical source and provide that source with opportunity to explain testimony that the record

---

[3] 20 C.F.R. §§404.1512(e)(1) & 416.912(e)(1) were eliminated from the Regulations effective March 26, 2012, and the new protocol for re-contacting medical sources is set forth at 20 C.F.R. §§404.1520b & 416.920b. Buckner v. Astrue, 2012 WL 5392255 * 11, n.4 (W.D.Pa., Nov. 5, 2012). However, the prior provisions continue to apply in cases such as this that were adjudicated prior to March 26, 2012. Johnson v. Colvin, 2014 WL 789084 *12, n. 16 (W.D.Pa., Feb. 26, 2014).

disputed); Johnson v. Colvin, 2014 WL 789084 at *12 (ALJ's finding that limitations were inconsistent with the evidence did not obligate him to re-contact medical source for clarification); Buckner v. Astrue, 2012 WL 5392255 at *11 (record was sufficiently developed for ALJ to make disability determination without need to re-contact medical source).

Plaintiff's final argument is that the ALJ erred in failing to consult with a medical advisor to establish plaintiff's onset date pursuant to SSR 83-20.[4] In support, plaintiff relies upon the decision of the Third Circuit Court of Appeals in Walton v. Halter, 243 F.3d 703 (3d Cir.2001), in which it was held that the ALJ must call upon the services of a medical advisor where there is no legitimate medical basis for the ALJ's determination of the disability onset date. Plaintiff's argument is not well-taken.

Walton's directive to seek out the services of a medical advisor is limited to situations where the underlying disease is progressive and difficult to diagnose, where the alleged onset date is far in the past, and where medical records are sparse or conflicting. See Newell v. Commissioner of Social Security, 347 F.3d at 549 n.7; Bailey v. Commissioner of Social Security, 354 Fed.Appx. 613, 618 (3d. Cir. 2009). Here, unlike in Walton, there is no deficiency in the medical records that would have required the assistance of a medical advisor to establish an onset date. Rather, the medical records, as discussed above, were available and were sufficient to establish the onset date determined by the ALJ without any need for a medical advisor. See, e.g., Perez v. Commissioner of Social Security, 521 Fed.Appx. 51, 57 (3d Cir. 2013)(no need to consult

---

[4] SSR 83-20 provides the analytical framework for determining a disability onset date. Newell v. Commissioner of Social Security, 347 F.3d 541, 548 (3d Cir. 2003). The onset date is defined under that Ruling as "the first day an individual is disabled as defined in the Act and regulations." SSR 83-20. Factors relevant to the determination of the disability onset date include the individual's alleged onset date, his work history and the medical evidence. Id. SSR 83-20 also instructs that "the onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in [substantial gainful activity] for a continuous period of at least 12 months ...."

medical advisor where medical records available to establish onset date); Bailey, 354 Fed. Appx. at 618 (no need for medical advisor where plaintiff did not allege that record was incomplete or conflicting).

In this case, it is clear that the ALJ, as required under SSR 83-20, considered all of the evidence, including plaintiff's alleged onset date, his work history and the medical evidence, and determined that plaintiff's impairments first became disabling on March 9, 2011. The foregoing evidence was sufficient for the ALJ to establish that day as plaintiff's onset date without the need to consult with a medical advisor. The court is satisfied that the ALJ's determination of plaintiff's onset date is supported by substantial evidence.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: George E. Clark, Esq.
Woomer & Hall
2945 Banksville Road
Suite 200
Pittsburgh, PA 15216

Michael Colville
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219